*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VALERE SCOTT,

      Plaintiff-Appellant,

v

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY and ESURANCE
INSURANCE COMPANY,

      Defendants-Appellees.

UNPUBLISHED
August 3, 2023

No. 360540
Macomb Circuit Court
LC No. 2020-003640-NF

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Plaintiff Valere Scott appeals as of right the order of the trial court granting summary disposition in favor of defendants, Esurance Property and Casualty Insurance Company and Esurance Insurance Company (collectively, Esurance), under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. BACKGROUND

This first-party no-fault case arises out of a mid-October 2019 motor vehicle accident where Scott was injured. Scott was in the right-turn lane on Fort Street in Detroit waiting to turn onto Outer Drive. While Scott was waiting to turn, a driver from the lane to Scott's left sideswiped the driver side of Scott's vehicle, causing an accident sometime around 9:30 a.m. Scott allegedly suffered injuries to her neck, back, shoulders, arms, and legs.

Scott insured her vehicle through Esurance. Shortly after the accident, she called Esurance to file an insurance claim. During the phone call, the insurance agent asked Scott if she was driving her vehicle for Uber or Lyft at the time of the accident. Scott responded, "Yes." Scott, at times, used her vehicle to drive for Lyft. At the time of the accident, Scott's insurance policy with Esurance contained an amendment excluding personal-protection-insurance (PIP) benefits for accidents that occurred while the insured was logged onto applications used for ridesharing. Scott's policy defined "ridesharing" as:

20. *"Ridesharing"* means the operation of any vehicle by an *"insured"* in connection with a *"transportation network company"* from the time an *"insured"* logs on or signs in to any Internet-based software application, website, or platform that connects or matches driver(s) with passenger(s) until the time an *"insured"* logs out of or signs off any such application, website or platform. This include[s] the time the *"insured"* is:

A. Logged on or signed in to any Internet-based software application, website, or platform and awaits requests for prearranged rides from potential passengers;

B. En route to pick up passenger(s); and

C. Transporting passenger(s).

21. *"Transportation network company"* means an entity qualified to [do] *"business"* in Michigan that provides transportation services using an Internet-based software application, website or platform that allows drivers and passengers to communicate for the purpose of providing transportation for compensation or a fee.

In early January 2020, Esurance denied Scott's claim because she was "operating [her] vehicle as a transportation networking company vehicle when the automobile accident occurred."

In mid-October 2020, Scott sued Esurance seeking PIP benefits. Esurance largely denied the allegations in Scott's complaint. It also asserted several affirmative defenses, including that Scott's claims were barred by MCL 500.3113.[1] During discovery, Esurance deposed Scott. During her deposition, Scott admitted that she had not yet picked up a passenger, but she was logged into the Lyft app at the time of the accident. She also testified that she "may have been going to pick them up but [she] didn't have nobody at the time."

In mid-August 2021, Esurance moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Relying on records from Lyft and Scott's own admissions, Esurance argued there was no genuine issue of material fact that Scott was logged into the Lyft app at the time of the accident, precluding her from receiving PIP benefits under the policy. In late August 2021, Scott responded, arguing that a factual dispute existed regarding whether she was logged into the Lyft app at the time of the accident. She asserted that the exact time of the accident was unclear and the police reports indicating the time of the accident were inadmissible hearsay. Scott also noted that the police report did not mention whether Scott had a passenger in the vehicle at the time of the accident, implicitly arguing that without a passenger present, the exclusion could not apply.

---

[1] As will be discussed later, MCL 500.3113(e) allows insurers to avoid coverage if a policy includes an exclusion authorized under MCL 500.3017. The latter provision allows insurers to incorporate a rideshare exclusion into policies, which can exclude coverage when a driver is not only carrying a passenger, but also when the driver is logged into a rideshare company's digital network, i.e., its app. See MCL 500.3017(1)(b) and (2)(a) through (c).

And she argued that there was a question of whether the amendment including the rideshare exclusion was a part of her policy when she first procured it, or if Esurance unilaterally altered the policy "post execution," rendering it void.

After a hearing, the trial court granted Esurance's motion, concluding that the policy language was unambiguous, and that Scott's "own unequivocal testimony" demonstrated there was no factual dispute that she was engaged in ridesharing as defined in her policy at the time of the accident. Accordingly, the court found that Esurance did not have to provide coverage and granted summary disposition in its favor. Scott moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Although Esurance moved for summary disposition under MCR 2.116(C)(8) and (C)(10), the trial court granted summary disposition under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

"Issues of statutory interpretation are questions of law that this Court reviews de novo." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012) (footnote omitted). "The interpretation of a contract, such as an insurance policy, is also reviewed de novo." *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 507; 967 NW2d 841 (2021).

Scott did not raise her argument that the Lyft records constituted hearsay for which Esurance failed to lay a proper foundation until her motion for reconsideration, so the issue is unpreserved. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). We therefore review this issue for plain error. See *Mr Sunshine v Delta College of Trustees*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358042); slip op at 2; see also *Wischmeyer v Schanz*, 449 Mich 469, 483, 483 n 26; 536 NW2d 760 (1995); *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).[2] To demonstrate plain error, a party must

---

[2] Our Court has applied two different standards to unpreserved issues in the civil context: plain-error, see, e.g., *Wischmeyer*, 449 Mich at 483 & n 26; *Mr Sunshine*, ___ Mich App at ___; slip op at 2; *Kern*, 240 Mich App at 336, and the so-called "raise-or-waive" rule, see, e.g., *In re Conservatorship of Murray*, 336 Mich App 234, 240-242; 970 NW2d 372 (2021); *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-194, 194 n 5; 920 NW2d 148 (2018) (acknowledging that the Michigan Supreme Court has applied the plain-error standard in the civil context and noting that the Michigan Supreme Court has yet to hold that plain-error is the

show: (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected the outcome of the proceedings. *Mr Sunshine*, ___ Mich App at ___; slip op at 2.

## III.  LAW AND ANALYSIS

Scott argues that the trial court erred when it granted summary disposition to Esurance because it improperly considered hearsay evidence: the Lyft records and police reports.  Without that evidence, Scott contends, there remains a factual dispute regarding whether she was logged into the Lyft app at the time of the accident.  We disagree.

The no-fault act, MCL 500.3101 *et seq*., allows insurers to "avoid coverage of PIP benefits under certain enumerated circumstances." *Meemic Ins Co v Fortson*, 506 Mich 287, 303; 954 NW2d 115 (2020).  "MCL 500.3113 lists several of these circumstances . . . ." *Id*.  Relevant here, MCL 500.3113(e) provides that a person may not receive PIP benefits if at the time of the accident, they were the "owner or operator of a motor vehicle for which coverage was excluded under a policy exclusion authorized under [MCL 500.3017]."  MCL 500.3017, in turn, allows insurers to incorporate rideshare exclusions into their policies, and permits these exclusions to apply not only when the driver has a passenger in the vehicle, but also when the driver is logged into the rideshare company's app:

> (1) An authorized insurer that issues an insurance policy insuring a personal vehicle may exclude all coverage afforded under the policy for any loss or injury that occurs while a transportation network company driver is logged on to a transportation network company digital network or while a transportation network company driver is providing a prearranged ride.  By way of example and not as limitation, all of the following coverages may be excluded under this section:
>
> * * *
>
> (b) Personal protection and property protection insurance required under section 3101.
>
> * * *
>
> (2) This section does not require an automobile insurance policy to provide coverage under any of the following circumstances:

---

correct standard to apply).  Our Supreme Court has yet to state definitively which standard is the appropriate standard for the civil context.  In practice, both standards are unforgiving.  Here, we apply the plain-error standard because it provides a workable standard, as opposed to "raise-or-waive," which treats an issue as waived unless a panel decides there is a compelling reason to address an otherwise waived issue.  See *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008); see also *Shah*, 324 Mich App at 194-195 (declining to exercise jurisdiction to review a waived issue for want of a compelling reason to do so).

(a) While a transportation network company driver is logged on to a transportation network company digital network.

(b) While a transportation network company driver is engaged in providing a prearranged ride.

(c) While a transportation network company driver otherwise uses a vehicle to transport passengers for compensation. [MCL 500.3017(1)(b) and (2)(a) through (c).]

Under MCL 500.3017(1)(b), therefore, an insurer issuing a policy to insure a personal vehicle may exclude coverage of PIP benefits (or other coverage as articulated in MCL 500.3017(1)) for any loss or injury occurring "while a transportation network company driver is logged on to a transportation network company digital network or while a transportation network company driver is providing a prearranged ride." MCL 500.3017(2)(a) through (c), in turn, indicate that a policy need not provide coverage while a driver for a transportation network company is (1) logged onto the company's "digital network," i.e., their app; (2) "engaged in providing a prearranged ride"; or (3) "otherwise uses a vehicle to transport passengers for compensation." MCL 500.3017(2)(a) through (c).[3]

"Insurance policies are interpreted like any other contract." *Bridging Communities, Inc v Hartford Cas Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 355955); slip op at 5, lv pending. "Our goal in contract interpretation is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language of the contract itself." *Kendzierski v Macomb County*, 503 Mich 296, 311; 931 NW2d 604 (2019) (citation omitted). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Id.* (citation omitted). The terms of the policy include the policy's declarations sheet. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005).

The plain and unambiguous language of Scott's policy excludes coverage when the insured is logged into a transportation network company's digital network. It also excludes coverage if the insured is on the way to pick up a passenger.[4] MCL 500.3113 and MCL 500.3017 allowed

---

[3] We note that nothing in MCL 500.3017 "preclude[s] an insurer from providing coverage for a transportation network company driver's personal vehicle by contract or endorsement." MCL 500.3017(e).

[4] For the purposes of this case, it is immaterial that Scott did not have a passenger in her vehicle at the time of the accident. The applicable statutes allow an insurer to exclude coverage for loss or injury occurring when an insured is not only transporting passengers for a transportation network company, but also when an insured is simply logged into a transportation network company digital network. Compare MCL 500.3017(2)(a) with MCL 500.3017(2)(b) and (c). See MCL 500.3017(1)(b) (allowing insurers to exclude coverage for loss or injury occurring "while a transportation network company driver is logged on to a transportation network company digital network *or* while a transportation network company driver is providing a prearranged ride.")

Esurance to exclude coverage in this manner. See MCL 500.3113(e); MCL 500.3017(1)(b) and (2)(a) through (c). Scott admitted—once during a phone call with an Esurance representative immediately after the accident, and again at her deposition—that she was logged into the Lyft app at the time of the accident. She further indicated at her deposition that she "may have been" on her way to pick up a passenger at the time of the accident. Scott's own admissions excluded her from coverage, and the trial court did not err in granting summary disposition in Esurance's favor on this basis.

Scott argues, however, that there is an issue of fact regarding whether she was logged into the Lyft app at the time the accident occurred. She contends that the police reports and Lyft records constitute hearsay for which Esurance failed to lay a proper foundation. Without these records, Scott says, there is a factual dispute about the time of the accident, and therefore a dispute about whether she was logged into the Lyft app at the time of the accident. We disagree.

Her admission that she was logged into the Lyft app at the time of the accident aside, Scott is mistaken about the propriety of considering the police reports and Lyft records for purposes of summary disposition. Though a motion for summary disposition "must be supported by admissible evidence, that evidence" need not be in "admissible form." *Latits v Phillips*, 298 Mich App 109, 113; 826 NW2d 190 (2012) (quotation marks and citations omitted). See also MCR 2.116(G)(6) (providing that documentary evidence offered in support or opposition to a motion under MCR 2.116(C)(10) may only be considered "to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion."). Thus, at the summary-disposition stage, a party is not required to lay a proper foundation for the admission of documentary evidence for the court to consider that evidence "as long as there was a plausible basis for the admission of the [evidence]." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2008).

Regarding the police reports, it is "not necessarily the case" that the substance of the reports, or even potentially the reports themselves, would be inadmissible at trial. *Latits*, 298 Mich App at 114. The responding officer and 911 operator could testify to their observations, actions, and the timing of certain events that are reflected in the report. See *id*. at 113-114. In this case, even the reports themselves are "plausibly admissible" under MRE 803(6) and "might also be admissible under MRE 803(8)." *Id*. at 114 (quotation marks and citations omitted). MRE 803(6) allows the admission of a "record that is compiled and kept in the regular course of business." *Merrow v Bofferding*, 458 Mich 617, 619, 627; 581 NW2d 696 (1998). That is particularly true here, where the trial court only appeared to rely on the general times in the report, such as the time of the 911 call and dispatch, to corroborate the timeline provided by Scott's own statement. The

---

(emphasis added). Though raised before the trial court, on appeal, Scott has not argued that MCL 500.3113(e) and policy exclusions like the one at issue here are invalid because they create situations in which drivers are uninsured. This may be the case where, for example, a driver is not covered by supplemental ridesharing insurance because they are not presently transporting a fare, and not covered by their personal insurance because they remained logged into a ridesharing app. Esurance addresses the issue in its brief. But because it is not properly before us, we decline to address it.

Lyft records are also plausibly admissible under the business-record exception. As the letter from Lyft accompanying the records demonstrates, the ride-history records are compiled and kept in the regular course of Lyft's business. And where there is a "plausible basis for the admission" of evidence, a party need not lay a proper foundation for its admission before the trial court may consider that evidence at the summary-disposition stage. See *Barnard*, 285 Mich App at 373-374. The trial court therefore did not err in considering the police reports and Lyft records when evaluating Esurance's motion for summary disposition. Even if it had, Scott's own admission that she was logged into the Lyft app at the time of the accident was by itself enough to support the grant of summary disposition.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Noah P. Hood